IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHAQUANDA RICE PIPPEN, and                                                         PLAINTIFFS
ANGELIA RICE

V.                                                      CIVIL ACTION NO. 1:17-CV-123-SA-DAS

TRONOX, LLC, and
ALLEN BLASTING AND COATING, INC.                                                 DEFENDANTS

ORDER AND MEMORANDUM OPINION

On August 14, 2014 George Rice died in a work-related accident in Hamilton, Mississippi. George Rice's daughters Shaquanda Rice Pippen and Angelia Rice are the co-administrators of George Rice's estate and they filed this wrongful death suit on August 10, 2017. *See* Complaint [1]. Now before the Court is Defendant Tronox, LLC's Motion for Summary Judgment [57].[1]

*Factual and Procedural Background*

The following facts are taken directly from the summary judgment record in this case. The Court resolves factual controversies in the non-movant Plaintiffs' favor. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994).

Defendant Tronox operates a plant in Hamilton, Mississippi that manufactures titanium dioxide. At the time of his death, George Rice worked for Jimco Integrated Services, Inc. Jimco is an independent contractor that provides dredging and de-watering services at Tronox's plant pursuant to a Master Work Agreement. Tronox uses a series of large waste ponds to manage solid wastes generated by its production processes. Dredges are used to remove the solid waste from the waste ponds. A dredge is a floating vessel used for an excavation activity that is carried out at least

---

[1] Also before the Court are Tronox's Motions in Limine [59, 61].

partially or fully submerged under water, with the purpose of gathering up bottom sediments and disposing of them or transferring them to a different location.

During the early morning hours of August 12, 2014, Rice was operating a dredge on a waste pond at the Tronox plant. This particular dredge is a large piece of equipment, weighing in excess of 20,000 pounds, that floats on two large parallel pontoons. Water infiltrated at least one of the pontoons on the dredge causing it to lose stability and capsize. When the dredge capsized, Rice drowned.

On June 18, 2014, less than two months prior to Rice's death, Jimco removed the dredge from the waste pond with a crane and contracted with Allen Blasting and Coatings, Inc. to perform repairs to the dredge, including sandblasting and recoating of the pontoons. A new diesel engine was also installed in the dredge. According to Jimco employee Kenneth Conn, the dredge was listing to one side and was taken out of service for that reason. After a little over a month, the dredge was put back into service on July 26, 2014.

The Plaintiffs seek compensation for Rice's death and allege claims under Mississippi law for negligence and negligent misrepresentation against Tronox. Tronox now requests summary judgment in its favor on all of the Plaintiffs' claims.[2] Tronox argues that it is immune from responsibility under Mississippi Code § 11-1-66, that the Plaintiffs cannot establish the elements of negligence, and that the Plaintiffs failed to bring forth any competent evidence to support their negligent misrepresentation claims. Briefing is complete and this Motion is ripe for review.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the

---

[2] The Plaintiffs brought similar claims against Allen Blasting and Coating, Inc., the company that performed repairs to the dredge. These claims are the subject of a separate pending Motion for Summary Judgment [67].

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F. 3d at 1075. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Pree v. Washington Cty. Bd. of Supervisors*, No. 4:16-CV-122-SA, 2018 WL 522776, at *6 (N.D. Miss. Jan. 23, 2018) (*citing Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1429 (5th Cir. 1996)). Mississippi substantive law applies in this diversity case. *See Cox v. Wal-Mart Stores E., L.P.*, 755 F. 3d 231, 233 (5th Cir. 2014) (*citing Wood v. RIH Acquisitions MS II, LLC*, 556 F. 3d 274, 275 (5th Cir. 2009)).

*Independent Contractor*

The Parties agree that under Mississippi law, the general rule is that an owner has a duty to furnish the employees of an independent contractor with a "reasonably safe place to work or give warning of danger." *Ratcliff v. Georgia Pac. Corp.*, 916 So. 2d 546, 549 (Miss. Ct. App. 2005) (*citing Mississippi Chemical Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979); *Mississippi Power Co. v. Brooks*, 309 So. 2d 863 (Miss. 1975)). The Mississippi legislature has, however, limited this duty in certain respects relative to independent contractors. "No owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the independent contractor's employees resulting from dangers of which the contractor knew or reasonably should have known." MISS. CODE. ANN. § 11-1-66.

This is consistent with Mississippi common law. *See Ratcliff*, 916 So. at 549 (*citing Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267, 270 (Miss. 1970) (stating "however, the owner is relieved of his duty to give warning to the independent contractor or his employees if the independent contractor is aware of the danger."); *see also Coho Resources Inc. v. McCarthy*, 829 So. 2d 1, 11(¶ 21) (Miss. 2002) (*citing Magee v. Trans Continental Pipeline Corp.*, 551 So. 2d 182, 185 (Miss. 1989)) (*stating* "moreover, the owner has no duty to protect the independent contractor or his employees from dangers arising out of or intimately connected with the work to be performed by the independent contractor.").

Tronox argues that Rice was an independent subcontractor, and that the Plaintiffs have admitted that he knew or should have known of the danger. The questions the Court must answer are whether any genuine disputes of material fact exist as to whether Rice was the employee of an independent contractor, and whether he knew or reasonably should have known of the danger which caused his death. *See* MISS. CODE. ANN. § 11-1-66.

It is undisputed that Jimco was operating as an independent contractor performing work under a Master Work Agreement, that Rice was a Jimco employee, and that Jimco owned the dredge that capsized killing Rice. Indeed, the Master Work Agreement executed by Tronox and Jimco contains the following clause, the validity of which is undisputed:

> 28. INDEPENDENT CONTRACTOR. In performance of the Work under a Work Order, Contractor shall act solely as an independent contractor in performing the Work contemplated by this Agreement, and nothing herein shall, under any circumstances, constitute Contractor or its employees or subcontractors, the agent or employee of the Company for tax purposes (FICA, income and the like), for purposes of claiming entitlement to any benefits offered, paid or provided by the Company to the Company's employees including, but not limited to, medical, retirement, stock ownership or savings plans, or for any other purpose. Contractor agrees to defend, indemnify and hold the Company free and harmless from and against any and all claims, demands and causes of action brought by or on behalf of Contractor's employees or subcontractors which are based on a claimed employee/employer or master/servant relationship between the Company and any such employee or subcontractor of Contractor or brought by any governmental entity, foreign or domestic, based upon any similar allegation or claim.

In its responses to Tronox's requests for admission, the Plaintiffs admitted the following:

> **REQUEST NO. 11:** Admit that Jimco knew or should have known that the condition of the H&H mini-dredge on August 14, 2014 presented a danger to Rice, and that the dangerous condition of the H&H mini-dredge caused the death of Rice.
>
> **RESPONSE TO REQUEST NO. 11:** Admitted. Tronox was in control of the site and likewise knew or should have known of the dangerous conditions.

Because the knowledge-of-danger requirement in section 11–1–66 is satisfied with reference to that which either Rice or Jimco knew or should have known, and because an admission under Federal Rule of Civil Procedure 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended," Tronox is immune from liability. MISS CODE ANN. § 11-1-66; FED. R. CIV. P. 36; *Green v. Polyester Fibers, LLC*, No. 1:13-CV-00234-SA-DAS, 2015 WL 5918065, *3 (N.D. Miss. Oct. 9, 2015); *McSwain v. System Energy Resources, Inc.*, 97 So. 3d 102, 109 (Miss. Ct. App. 2012).

Even if section 11-1-66 did not apply here, and Tronox owed and breached a duty to Rice, the Court notes that there is a causation issue with the Plaintiffs' claim. Because it is undisputed that Rice's death was caused by the dredge capsizing, the facts of this case do not fall within the

5

typical parameters of premises lability. The Plaintiffs in this case seek to impose liability against Tronox, not for a defect or danger present on the premises, but for a danger or defect in the independent subcontractor's own equipment.

All of the cases relied upon by the Plaintiffs to impose liability on Tronox involved dangers or defects with the owner's physical premises. *See Mississippi Chem. Corp. v. Rogers*, 368 So. 2d 220, 221 (Miss. 1979) (employee of subcontractor fell through owner's roof), *Mississippi Power & Light Co. v. Nail*, 211 So. 2d 815, 817 (Miss. 1968) (independent pest control subcontractor electrocuted when he got too close to power lines while attempting to remove a bird's nest), *Mississippi Power Co. v. Brooks*, 309 So. 2d 863, 865 (Miss. 1975) (independent contractor killed after falling down vertical air duct), *Whatley v. Delta Brokerage & Warehouse Co.*, 248 Miss. 416, 423, 159 So. 2d 634, 636 (1964) (independent subcontractor modifying grain bins injured when bins collapsed due to being prematurely filled with beans and an insufficient foundation provided by owner), *Calonkey v. Amory Sch. Dist.*, 163 So. 3d 940, 945 (Miss. Ct. App. 2014) (independent subcontractor fell through hole in catwalk above stage).

The Court also notes that the in the first three cases cited by the Plaintiffs, *Rogers*, *Nail*, and *Brooks*, the Court did not find a basis for liability against the premises owner.[3] The Court in *Whatley* did, but for the owner's own active negligence, an insufficient concrete foundation of which the subcontractor could not have known, and for refusing to empty the grain bins after two warnings from the subcontractor that the sides were bulging from the weight of the beans. The Court in *Calonkey* denied summary judgment finding questions of fact as to whether the subcontractor reasonably should have known about the hole in the catwalk.

---

[3] The arguments asserted by the Plaintiffs with respect to the holdings of these three cases is misleading, and with respect to the *Brooks* case in particular, dangerously close to misrepresentation.

6

In this case, it is undisputed that Rice was killed by a danger or defect in Jimco's own equipment, the dredge. There is no allegation that there was any issue with the waste pond or any part of the physical premises that played a role in the dredge capsizing. In short, the Court is unaware of any authority, and the Plaintiffs have failed to cite to any, that could support the imposition of liability on a contractor or premises owner for a danger or defect in a subcontractor's own equipment. Holding otherwise would result in a substantial expansion of liability for premises owners without any basis in law, common or statutory. For this reason, the Court finds that the application of premises liability principles to this case, as argued by the Plaintiffs, does not give rise to liability for Tronox.

*Substantial Control*

The Plaintiffs also argue that Tronox maintained control over the worksite to such a large extent that Tronox had *de facto* control over the dredging operation and therefore should be liable for Rice's death. Under Mississippi common law, an owner is under no duty to protect an independent contractor's employee from a danger "which is inherent to the work the independent contractor is employed to perform or which arises from, or is intimately connected with, that work." *Johnson v. Wal-Mart Stores E., LP*, No. 3:12-CV-21-CWR, 2013 WL 395975, at *2 (S.D. Miss. Jan. 31, 2013) (*citing Galvan v. Mississippi Power Co.*, No. 1:10CV159-KS, 2012 WL 1898889, at *5 (S.D. Miss. May 22, 2012), *Magee*, 551 So. 2d at 185); *see also McSwain*, 97 So. 3d at 108. The critical factor that this exception turns on is "whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury." *Johnson*, 2013 WL 395975, *2 (*citing Nelson v. Sanderson Farms, Inc.*, 969 So. 2d 45, 50 (Miss. Ct. App. 2006) (*quoting Magee,* 551 So. 2d at 186). "The policy behind this exception is that [t]he party in the best position to eliminate a dangerous condition should be burdened with

that responsibility." *McSwain*, 97 So. 3d at 109 (citation and quotation marks omitted). This exception will not apply "if the plaintiff can show that . . . the premises 'owner maintained substantial *de facto* control over those features of the work out of which the injury arose.'" *Johnson*, 2013 WL 395975, *2 (*quoting Nelson*, 969 So. 2d at 50).

In this case, the Plaintiffs argue that Tronox exercised substantial control over Jimco's work because Tronox had two supervisors assigned to the dredging area, provided safety training and regulations over all of its subcontractors, generated incident reports for all accidents involving subcontractors, conducted quarterly inspections of the work areas, had the right to perform safety inspections and tests of the work area and subcontractor equipment, and had the right to require Jimco to remedy any deficiencies found. Tronox agrees that it had these rights under the Master Work Agreement but denies that this rises to a level of *de facto* or substantial control sufficient to impose liability in this case, especially with respect to the operation of the dredge.

Mississippi law supports the proposition that Tronox, as the customer, had the right to see and inspect Jimco's work and to ensure that it complied with the terms of their agreement and Tronox's requirements without effecting substantial control. *See Galvan*, 2012 WL 1898889, at *8 (gathering cases) (*citing McLaurin v. Nobel Drilling, Inc.*, 2009 WL 367401 (S.D. Miss., Feb. 10, 2009) (fact of control over the contractor's work is not established where: 1) owner helped create safety program, 2) owner had right to stop work, 3) owner had company man on site at all times, as well as a group of site representatives to monitor all of the contractor's activities, 4) had site representatives who routinely evaluated the contractor's compliance with plans, specifications, work practices and quality and actually "interfaced with contractor's supervisors to make head counts and to synchronize the work and the movement of materials and equipment"); *Hodges v. Atala County,* 42 So. 3d 624, 627 (Miss. App. 2010) (the exercise or retention of a general right to

8

recommend safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability, nor is mere supervision over the work of the subcontractor, up to and including the right to stop a project and control sufficient to impose liability); *Chisolm v. Mississippi Department of Transportation*, 942 So. 2d 136, 141–42 (Miss. 2006) (owner's right to ensure that contractor's work complies with the owner's specs does not mean that the owner is exercising control over the physical conduct of the work. Therefore, owner has no liability arising from contractor's work); *and Magee*, 551 So. 2d at 185 (the fact that the owner conducts periodic inspections of the work does not constitute sufficient control to warrant liability for the contractor's work)).

Again, the Master Work Agreement executed by Tronox and Jimco contains the following relevant clause:

> 28. INDEPENDENT CONTRACTOR. In performance of the Work under a Work Order, Contractor shall act solely as an independent contractor in performing the Work contemplated by this Agreement, and nothing herein shall, under any circumstances, constitute Contractor or its employees or subcontractors, the agent or employee of the Company for tax purposes (FICA, income and the like), for purposes of claiming entitlement to any benefits offered, paid or provided by the Company to the Company's employees including, but not limited to, medical, retirement, stock ownership or savings plans, or for any other purpose. Contractor agrees to defend, indemnify and hold the Company free and harmless from and against any and all claims, demands and causes of action brought by or on behalf of Contractor's employees or subcontractors which are based on a claimed employee/employer or master/servant relationship between the Company and any such employee or subcontractor of Contractor or brought by any governmental entity, foreign or domestic, based upon any similar allegation or claim.

The Work Order in place at the time of the accident contains the following relevant language:

> In providing the work, Jimco's minimum requirements are as follows: Provide, operate, and maintain dredging equipment required to feed the plate and frame operation at the rates required for the plate and frame operation to dewater the waste solids as agreed to by Tronox and Jimco. The dredging equipment is to be properly maintained and complete with float lines and land-based pipelines and booster pumps, if needed, for delivery to the mix tanks.

Based on these precedents, the summary judgment record including the depositions of Jimco and Tronox employees, and specifically the Master Work Agreement and the Work Order,

show unequivocally that Jimco solely had responsibility for providing, operating, and maintaining the dredge. The Plaintiffs have not brought forth any competent evidence to the contrary.

*Subsequent Remedial Measures*

The Plaintiffs also argue that Tronox implemented much more specific and rigorous safety standards and requirements after the accident, and that these subsequent remedial measures are evidence of Tronox's substantial *de facto* control over the work, and support the imposition of liability for Rice's death. Without conceding that such remedial measures are admissible in this context, Tronox agrees that it did in fact implement various new safety policies and requirements related to dredging at its facility after the accident.[4] These new requirements include requiring Jimco to have a safety plan which Tronox reviewed, required an additional boat on the pond for safety and rescue, and imposed new minimum dredge safety requirements, including a requirement that Jimco increase and expand its equipment inspections, as well as various other safety related requirements.[5]

The Court finds these subsequent remedial measures very similar to those found not to be indicative of *de facto* control in *Lee II*. *Lee*, 98 F. Appx. 271. That case involved an accident related to construction scaffolding. After the accident the Defendant inspected the scaffolding, participated in and investigation into the accident, and imposed new safety requirements including

---

[4] The Plaintiffs rely on *Lee v. E I Dupont De Nemours & Co.*, 249 F. 3d 362, 363 (5th Cir. 2001) (*Lee I*) to support their argument that the subsequent remedial measures taken by Tronox are sufficient for the Court to find that Tronox exercised substantial control over the dredging operation to impose liability. The Plaintiffs argument relative to this precedent is again, misleading. In *Lee I* the Fifth Circuit remanded the case to the District Court for reconsideration finding that the District Court had improperly excluded evidence of subsequent remedial measures to prove substantial control. After remand the Fifth Circuit again considered the case (*Lee II*) and affirmed the District Court's finding that the subsequent remedial measures, taken alone or together with other evidence, did not create a genuine issue of material fact as to the Defendant's *de facto* control over the process where the Plaintiff was injured. *Lee v. E.I. Du Pont de Nemours & Co.*, 98 F. Appx 271, 276 (5th Cir. 2004).

[5] It appears from the record that some or all of the dredges in use at Tronox are now operated remotely. Although the Plaintiffs allege that Tronox "participated" in this decision, there is no evidence in the record that supports a finding that Tronox imposed remote operation as a requirement or played a substantial role in the decision.

(1) installing and requiring the use of retractable safety lines to provide fall protection; (2) sandblasting all scaffold structural steel to check it for cracks prior to assembly; and (3) requiring everyone who works on the scaffold to be certified. *Lee*, 98 F. Appx. at 278.

Based on the summary judgment evidence presented, the Court finds that the subsequent remedial measures imposed by Tronox were all safety related and undertaken pursuant to its right to impose safety requirements and inspections under the Master Work Agreement. These subsequent remedial measures, taken alone or together with other evidence, do not create a genuine issue of material fact as to Tronox's *de facto* control over the dredging process.

*Occupational Safety and Health Administration*
*Multi-Employer Doctrine*

Finally, the Plaintiffs argue that liability for Rice's death should extend to Tronox under the OSHA multi-employer doctrine. Tronox argues, and the Plaintiffs acknowledge, that the Fifth Circuit has stated that an employer may not be held liable under this doctrine when that employer's own employees are not exposed to a hazard. *See Melerine v. Avondale Shipyards, Inc.*, 659 F. 2d 706 (5th Cir. 1981). This is clearly the situation in this case, there is no allegation that Tronox's employees were exposed to the hazard, the dredge.

While the instant Motion was pending, the Fifth Circuit revisited its holding in *Melerine* in *Acosta v. Hensel Phelps Constr. Co.*, 909 F. 3d 723 (5th Cir. 2018). In *Acosta*, the Fifth Circuit held that "the Secretary of Labor has the authority under section 5(a)(2) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(2), to issue citations to controlling employers at multi-employer worksites for violations of the Act's standards." *Acosta*, 909 F. 3d at 743. This opinion represents a substantial change in direction. Tronox argues that the Court's holding in *Acosta* is limited to the Secretary's authority under the Act and does not alter the application of the multi-

11

employer doctrine to expand the common law duties or liabilities of employers. The Plaintiffs did not offer any argument in response.

In *Acosta*, the employer, Hensel Phelps, argued that "the controlling employer policy violates section 4(b)(4) of the Act. That provision states that 'nothing in this Act shall be construed to . . . affect . . . the common law . . . duties, or liabilities of employers.'" *Id*. at 733 (*quoting* 29 U.S.C. § 653(b)(4)). The Fifth Circuit rejected this argument, and adopted the reasoning of the D.C. Circuit on this issue. "[A]ny expansion of liability on the part of the contractor 'would arise only from a court's (hypothetical) later action under state law—not from the [ ] Act itself, which is all that § 4(b)(4) addresses.'" *Id*. at 734 (quoting *Summit Contractors, Inc. v. Sec'y of Labor*, 442 F. App'x 570, 572 (D.C. Cir. 2011) (per curiam)). The Fifth Circuit went on to state that "no controlling-employer citation under section 654(a)(2) would, on its face, affect Hensel Phelps' [employer's] *common law* duties as an employer." *Id* at 734.

Tronox argues, and this Court agrees, that because *Acosta* explicitly declines to expand the common law duties of employers, and because it is well settled under Mississippi law that "OSHA regulations are not admissible to show negligence on the part of [a] defendant," that liability cannot extend to Tronox under this doctrine. *Certain Underwriters at Lloyds', London v. Coastal Builders, Inc.*, No. 305-CV-689-WHB, 2007 WL 2684029, *3 (S.D. Miss. Sept. 7, 2007) (*citing Accu-Fab & Const., Inc. v. Ladner*, 778 So. 2d 766, 771 (Miss. 2001), *overruled on other grounds by, Mack Truck, Inc. v. Tacket,* 841 So.2d 1107 (Miss. 2003); *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 367 (Miss. 1997)). The Court also notes that although OSHA did conduct an investigation, there is no indication or evidence in the record that OSHA issued any citations related to Rice's death.

12

*Conclusion – Negligence*

For all of the reasons fully explained above, the Court finds that no genuine disputes of material fact exist as to the Plaintiffs' negligence claim against Tronox, and that the Plaintiffs failed to make a showing sufficient to establish the existence of several essential elements of their case, on they will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548. Summary judgment is granted in Tronox's favor on this claim.

*Negligent Misrepresentation*

The Plaintiffs also assert a claim of negligent misrepresentation against Tronox in this case. The Plaintiffs allege that Tronox gave the appearance of maintaining control and safety standards on its worksite, and that Rice relied on this representation when in fact the worksite was not safe. In support of their argument, the Plaintiffs allege that Tronox performed some safety inspections, and gave the appearance of inspections, such that Rice relied on Tronox to inspect and ensure that the dredge was safe.

In response, Tronox argues that the Plaintiffs have not brought forth any facts or evidence to support their negligent misrepresentation claim, and instead rely wholly on unsupported allegations. Tronox also argues that the Plaintiffs' admission, discussed above, that Jimco and Rice knew or reasonably should have known of the danger that caused Rice's death forecloses any argument that Rice reasonably relied on an alleged misrepresentation from Tronox as to the dredge's safety because Jimco, and Rice, had actual or constructive knowledge of the danger.

To state a claim for negligent or intentional misrepresentation, a plaintiff must allege that a defendant made a misrepresentation of material fact and the plaintiff reasonably or justifiably relied on that misrepresentation to its detriment. *See Heritage Properties, Inc. v. Ironshore*

13

*Specialty Ins. Co.*, No. 3:17-CV-637-DPJ, 2018 WL 506483, at *4 (S.D. Miss. Jan. 22, 2018) (*citing Holland v. Peoples Bank & Tr. Co.*, 3 So. 3d 94, 100, 101 (Miss. 2008)).

Based on the summary judgment record, it appears that the only safety related inspections conducted by Tronox were quarterly inspections that consisted of a walk or drive-through of the facility where Tronox inspectors would inspect the overall or general conditions of the worksite. If there was an incident, Tronox inspectors would conduct a more specific investigation after the fact. In short, the Plaintiffs have not brought forth any competent summary judgment evidence to support their allegation that Tronox gave the appearance of inspecting and ensuring the dredge's safety. Further, the Plaintiffs' admission that Jimco knew or reasonably should have known about the dangerous condition of the dredge wholly undermines their allegation that Rice relied on Tronox to inspect and ensure the dredge for safety.

For these reasons, the Plaintiffs have failed to point to any competent summary judgment evidence that creates a question of fact as to their negligent misrepresentation claim. Summary judgement is granted in Tronox's favor on this claim.

*Motions in Limine*

Tronox also has two pending motions in limine. In the first [59], Tronox requests that the Court exclude the expert testimony of the Plaintiffs' expert, Traci Campbell. Campbell's expert report and testimony largely consist of her opinions regarding OSHA regulations and their applicability, or not, to Jimco's dredging operation.

Tronox's second motion [61] requests the exclusion of certain opinions contained in the supplemental report and testimony of Jimco's expert Arthur Darden. Darden's report and testimony largely concern the stability characteristics of the dredge, the consequences of holes in

the pontoon, and the relationship between the sandblasting and recoating work performed by Allen Blasting and Coating and holes in the pontoon.

The Court reviewed the expert reports and testimony in question, but because summary judgment turned primarily on questions of law and the lack of genuine issues of material fact, and because the Court did not rely on the expert opinions in reaching its conclusion, the Court need not reach the merits of the motions in limine. Tronox's Motions in Limine [59, 61] are denied without prejudice as moot. Tronox's Omnibus Motion in Limine [99] to exclude certain evidence from introduction at trial is also rendered moot by the Court's ruling on summary judgment, and is also dismissed without prejudice.

*Conclusion*

For all of the reasons fully explained above, Tronox's Motion for Summary Judgment [57] is GRANTED on all claims. Tronox is DISMISSED from this case *with prejudice*.

It is SO ORDERED, on this the 14th day of January, 2019.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE